# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 21, 2013 Session

## JIM NAJIB JIRJIS v. TAMMY SUE JIRJIS

**Appeal from the Chancery Court for Williamson County**
No. 38938     Derek K. Smith, Judge

No. M2013-00512-COA-R3-CV - Filed April 30, 2014

The trial court granted a divorce to a husband and wife after a marriage of nineteen years. The court named the husband as the primary residential parent of the parties' children, divided the marital property between the parties, and awarded the wife transitional alimony of $3,000 per month for five years. The husband argues on appeal that the trial court erred in including his separate property in the marital estate subject to division. The wife argues that the alimony award was insufficient in light of the length of the parties' marriage and the disparity in income between them, and that the court erred in failing to award her attorney's fees. We agree that husband's separate property should not be included in the marital estate, but that the division of property is still equitable. We hold that the wife is entitled to alimony *in futuro*. We also find that she should be awarded one-half of the attorney's fees she incurred at trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Modified in Part, and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Robert E. Lee Davies, Franklin, Tennessee, for the appellant, Tammy Sue Jirjis.

Helen Sfikas Rogers, Lawrence James Kamm, Nashville, Tennessee, for the appellee, Jim Najib Jirjis.

# OPINION

## I. BACKGROUND

Dr. Jim Jirjis ("Husband") and Tammy Jirjis ("Wife") were married in June of 1993. At the time of their marriage Husband had just completed his medical degree at the University of Chicago. The couple subsequently moved to Nashville, where Husband began a residency in internal medicine, leading to a long and successful career at Vanderbilt University. Two children were born of the parties' marriage. A son was born in 1994 and a daughter was born in 1996.

Wife had a high school education and took some college courses before she was married. By mutual agreement, she stayed home during the course of the marriage to raise the parties' children and take care of the household while Husband established his career. Husband's income rose to over $360,000 a year, which enabled the parties to build a spacious house and live comfortably.

In 2007, Husband filed a complaint for divorce that he later voluntarily dismissed; he later filed another complaint.

## II. DIVORCE PROCEEDINGS

The case before us was initiated on September 21, 2010, when Husband filed a Complaint for Divorce. He alleged irreconcilable differences and sought custody of the parties' two children. Wife filed an Answer and Counter-Complaint for Divorce. She acknowledged that irreconcilable differences had arisen between the parties, but she alleged as an alternative ground that Husband was guilty of inappropriate marital conduct. Wife asked for an award of temporary and permanent alimony and also sought custody of the children.

The trial court granted the parties a divorce by Order entered on May 25, 2012. The trial to determine issues regarding the children, property division, and alimony took place on August 8, 9, and 10, 2012.

Evidence was presented during the trial regarding the value of the parties' Brentwood house. A professional appraiser testified that Husband and Wife paid $890,741 for the property in 2006, but that a subsequent downturn in the real estate market reduced its value considerably. In January of 2011, he performed an appraisal of the property and found its value to be $750,000. In January of 2012, he performed a second appraisal, which resulted in a value of $735,000. The exhibits in the record show that there were two mortgages on

the property with a total debt of $793,318.

Husband testified that the parties mutually agreed that Wife would stay home and raise the children while he established his career. The proof showed that the primary source of Husband's income was his clinical and administrative work at Vanderbilt. Husband earned additional income by serving as an expert witness in medical malpractice cases. He also earned royalties from an electronic medical record device that he had helped develop. His total income in 2010 was $374,000. In 2011, it was $350,000. By the time of trial, Wife had obtained a real estate license and was working as an assistant property manager. She was earning $3,000 per month.

Both parties submitted income and expense statements and were closely questioned about the contents of those statements. Both of the statements listed substantial expenses for the children, based on each party's assumption that he or she would be designated as the primary residential parent. Husband's statement recited monthly net income of $20,448 and expenses of $17,152. Under questioning, Husband acknowledged that the net income he reported excluded $1,600 per month in supplemental contributions to his retirement account - that is, contributions in excess of the mandatory contribution that was matched every month by his employer.

Wife's statement recited that her monthly net income was $2,550 and that her monthly expenses would be $9,580 per month upon leaving the marital home. She asserted a need of 7,000 a month in alimony. Wife's listing of expenses appears to reflect some inconsistencies in relation to housing. She listed rent of $2,300 a month, which she testified was the lowest price she could find for a suitable apartment in the Brentwood High School district. However, she also included an entry of $195 per month in Homeowner's Association dues and $160 per month for lawn maintenance.

Aside from the marital home, the parties' assets included bank and investment accounts with a total value of less than $50,000, a retirement account with a balance of about $30,000, two 529 College Savings Plans for the children, a bonus that Husband had earned but which had not yet been paid, 136,000 Southwest Rapid Reward points redeemable for airline flights, and three vehicles. The most valuable marital asset by far was Husband's Vanderbilt 403(b) retirement account, with a value of about $638,000.

One property issue involved a house in Chicago that had been owned by Husband's father and bequeathed to Husband, his brother and his sister, with the proviso that their stepmother be allowed to live there until her death. After the stepmother died, the siblings sold the property and divided the net proceeds. Husband's share of the proceeds amounted to $25,952. Husband placed that money in a new savings account in his name only. He

testified that he never commingled that money with other funds and contended that the account was his separate property, which should not be included in the court's division of the marital property.

At the conclusion of testimony, the trial court took the case under advisement and asked the parties each to file proposed findings of fact and conclusions of law. The court's determinations were announced in an order entered on December 5, 2012. The order noted that Husband and Wife were both 45 years old, in good health, employed, and that the parties had been married for nineteen years. The court found Husband's estimated annual income was $360,000, while Wife's estimated annual income was $36,000. The court noted a significant disparity in their abilities to earn that left Wife at a economic disadvantage.

The court named Husband the primary residential parent and awarded him the marital residence along with its attendant debt. Noting that the parties had been married for nineteen years, the court ordered that the remaining marital property "be divided to equalize the parties' liabilities and assets." Husband was awarded the 2005 Ford F-150 that he drives as well as the 2002 Honda Accord that the son drives. Wife was awarded the 2005 Lexus that she drives. The court did not specify exactly how any of the personal property was to be valued for the purposes of division. The court also declared that Father had failed to prove that he owned any separate property.

Turning to the question of alimony, the court noted that although Husband earned substantially more than Wife, he also had mortgage debt and monthly expenses for the children, and that "Son and Daughter attend private schools, and he testified that he intends to pay for their college educations." The court awarded Wife transitional alimony of $3,000 a month for five years because she "has a significant need wherein she is economically disadvantaged and needs to adjust to the economic consequences of her divorce." Each party was held responsible for his or her own attorney fees.

Husband and Wife each filed motions to alter or amend. On February 14, 2013, the court entered an order which clarified some of its rulings related to the marital property. Among other things, the court found that the debt on the marital residence exceeded its value and ordered that Husband's 401(k) account be used to equalize the division of assets. As outlined in Wife's motion, the cars were to be assigned their Kelly Blue Book value as of August 1, 2012, which resulted in an order that Wife receive $1,923.50 to equalize the value and award of the vehicles.

The court also ordered that "Husband's bonus, which was earned as of June 30, 2012, but not paid until August 31, 2012, is considered marital property and shall be added to the marital estate and divided equally." Finally, the court decided that the other assets be valued

as of the conclusion of the divorce trial, August 10, 2012, and that alimony and child support be retroactive to that date.

## III. DIVISION OF THE MARITAL ESTATE

### A. Marital and Separate Property

Tennessee is a dual property state because it recognizes both "marital property" as well as "separate property." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010); Tenn. Code Ann. § 36-4-121. In an action for divorce, the court is authorized to divide the marital property "equitably" between the parties "without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). The statute requires an equitable division of marital property, not an equal division. *Larsen-Ball*, 301 S.W.3d at 231; *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

"'Marital property' means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A). The court is not authorized to divide "Separate Property," which includes "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." Tenn. Code Ann. § 36-4-121(b)(2)(D).

Husband contends that the trial court erred in finding that he had failed to prove that he owned any separate property. The record shows that Husband acquired a one-third interest in a home in Chicago through a bequest from his father, and that when the home was sold, he deposited one-third of the net proceeds in a bank account number in his own name. He also testified that he never commingled the contents of that bank account with any marital property.

Wife concedes on appeal that ". . . there was no basis for the Trial Court to classify this [separate] Bank account as marital property." We hold that the money Father received as a bequest from his father remained Husband's separate property, and, therefore, reverse the portion of the trial court's order that included it in the division of marital property. The account is awarded to Husband as his separate property. This re-allocation of assets reduces the total value of the marital estate. However, distribution of that estate need only be equitable, not equal. We decline to disturb the distribution of the remaining marital assets.

**B. The Marital Home**

Neither party objects to the trial court's decision to divide the marital property equally between them. Both parties assert, however, that the trial court erred by failing to find an exact value for the marital home. As we have written, "[a]fter a trial court has classified the parties' property as either marital or separate, it should place a reasonable value on each piece of property subject to division." *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007). When evidence of a property's value is conflicting, the court may place a value on the property within the range of the values represented by the evidence. *Id*.; *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). In light of the trial court's oversight and failure to place a value on the marital home, we will conduct our own independent review of the record to determine the appropriate value. *See Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999) (where trial court fails to make findings of fact, reviewing court shall conduct its own review of the record to determine where preponderance of evidence lies).

The appraiser offered as an expert at trial testified that when he appraised the property in January of 2011, he found its value to be $750,000. He returned to reappraise the property in January of 2012 and found its value to be $735,000. Under cross-examination, the appraiser acknowledged that the value of the property may have increased slightly between January of 2012 and the date of the hearing, but he was unable to confirm that unequivocally or to estimate the amount of the possible increase without another appraisal.

The trial court did not establish a value for the house. Wife argues that the appraiser's testimony was sufficient to allow the trial court to value the property at $750,000. Husband urges us to adopt the more recent appraisal value of $735,000. Since more money is owed than the house is worth, there is no asset related to the house to be awarded. There is not much difference between the value Mother argues is correct and that which Husband argues is correct. We will, therefore, select a value between the two figures and determine the value of the marital home to be $742,500.

The trial court awarded the marital home to Husband and made him solely responsible for the mortgage debt. Appraisal testimony made it evident that the amount of the debt was greater than the value of the home. In its amended order, the trial court ordered that "Husband's 401k account be used to equalize the division of assets." Without more direction, it is not clear how the parties are supposed to "equalize the division of assets."

The Supreme Court has stated that "[w]hen there are few marital assets but a considerable amount of marital debt, a trial court should . . . consider awarding a disadvantaged spouse a lesser amount of marital debt." *Robertson*, 76 S.W.3d at 341. In light of the disparity in income, employability, and education between Husband and Wife,

we find it equitable to award Husband not only the marital home, but also the debt associated with the home, without any adjustment to the division of the other assets. This is especially equitable in view of our award to Husband of his separate bank account.

### C. The Remaining Marital Property

The other property issues raised by Wife are the values of Husband's accounts receivable, his bonus, and his Southwest Rapid Reward points. The accounts receivable are from Husband's work as a consultant and expert witness in medical malpractice cases. The total value of the listed receivables is $23,900. Wife does not dispute the accuracy of the figures on the list, but her own list of Husband's receivables includes an additional $20,000 due from some unknown party.

Husband testified that the $20,000 relates to work he did five years ago, and that he has since written-off any possibility of payment. Wife did not offer any evidence to controvert his testimony. We accordingly find that Husband's accounts receivable are worth $23,900 and that Wife is entitled to one half of that amount, or $11,950.[1]

The trial court's amended order declared that "Husband's bonus, which was earned as of June 30, 2012, but not paid until August 31, 2012, is considered marital property and shall be added to the marital estate and divided equally." Husband's bonus was apparently derived from Vanderbilt's method of paying its faculty members. According to Husband's testimony, his compensation, and that of other clinical faculty is based in part on the number of patients he sees and the income generated by those patients. Since that amount can vary from year to year, Vanderbilt's monthly checks reflect payment to each faculty member of 95% of the income he or she received in the prior year. At the end of each quarter, an adjustment is made to reflect the actual productivity of the employee. Thus, four paychecks a year are usually bigger than the rest.

The record includes Husband's monthly payroll statements from Vanderbilt for December 2011 and January through July of 2012, but not August of 2012. Though there are slight variations from month to month, most of the monthly statements show average federal taxable gross income of about $23,000 and net income of about $14,000 after deductions for taxes, insurance, and retirement. The statements for February and May show a "productivity adjustment" of $8,836 and $8,608, respectively, with corresponding increases in gross income and gross federal taxable gross income.

---

[1]In the event, however, that Husband should collect any part of the $20,000 owed to him, Wife is entitled to one-half of the collected amount.

We deem the "productivity adjustment" reflected in Husband's August payroll statement to be the bonus that the trial court declared to be marital property and ordered divided between the parties. Because Husband's August payroll statement is not in the record, we cannot place an exact value on his bonus. We therefore direct the trial court on remand to order Husband's attorney to furnish opposing counsel with the August statement and to satisfy the trial court's order by having Husband pay Wife half of the productivity adjustment documented in that statement.

With regard to the Southwest Rapid Rewards points, it is difficult to place a value on this asset. Expert testimony was not provided on this issue. Taking into consideration the division of the other marital assets, we find it equitable to award these points to Husband.

## IV. ALIMONY

Wife identifies alimony as the key issue in this case. She does not dispute the trial court's findings of fact, with the exception of its conclusion that the son and the daughter attend private schools.[2] She argues, however, that there is a disconnect between the court's findings and its decision on her request for alimony.

The court ruled that Wife was entitled to five years of transitional alimony at $3,000 per month. Wife describes this award as an "illogical result" in light of the factors normally used to determine alimony, including the length of the marriage and the disparity between the earning capacity of the parties. She asks this court to award her $6,000 per month as alimony *in futuro*.

### A. Types of Alimony

There are four types of spousal support, or alimony, available in Tennessee: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1); *Gonsewski*, 350 S.W.3d at 107. Alimony *in futuro* is intended to provide support on a long-term basis and is to continue until the recipient dies or remarries. Tenn. Code Ann. § 36-5-121(f)(1). The statute provides that this type of alimony is appropriate when

> there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after

---

[2]Wife states both children were enrolled in public schools at the time of trial.

the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse . . . .

Tenn. Code Ann. § 36-5-121(f)(1).

Alimony *in solido* is another form of support and is typically paid in one lump sum or else paid in installments over a period of time. Tenn. Code Ann. § 36-5-121(h)(1). Alimony *in solido* may be awarded in place of, or in addition to, another alimony award, for the purpose of providing support, including attorney's fees, where appropriate. Tenn. Code Ann. § 36-5-121(d)(5); *Gonsewski*, 350 S.W.3d at 108.

The third category of support, rehabilitative alimony, is meant to assist an economically disadvantaged spouse to acquire additional education or training in an effort to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse. Tenn. Code Ann. § 36-5-121(e)(1); *Gonsewski*, 350 S.W.3d at 108. The legislature has expressed a preference for this type of alimony in those situations when the economically disadvantaged spouse is reasonably able to obtain an earning capacity that is reasonably comparable to the economically advantaged spouse. Tenn. Code Ann. § 36-5-121(d)(2).

The final type of support is transitional alimony. This form of alimony is appropriate when a court determines that rehabilitation is not necessary, but the economically disadvantaged spouse needs help adjusting to the economic consequences of a divorce. Tenn. Code Ann. § 36-5-121(g)(1); *Gonsewski*, 350 S.W.3d at 109. This type of alimony has been described as assisting a person in transition become adjusted to the status of living as a single person. *Mills v. Mills*, 2010 WL 3059170, at *5 (Tenn. Ct. App. Nov. 24, 2009).

Our courts have stated frequently that when making alimony determinations, the two most important considerations are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

## B.      Factors to Consider

The statutory factors for the courts to consider in determining whether to award spousal support and, if so, to determine the nature, amount, length, and manner of payment, are found at Tenn. Code Ann. § 36-5-121(I), and include:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Trial courts have "broad discretion to determine whether spousal support is needed

and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004), *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn.2001), and *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). A trial court's decision regarding spousal support is factually driven and involves the careful balancing of several factors. *Gonsewski*, 350 S.W.3d at 105. An appellate court is, therefore, disinclined to second-guess a trial court's spousal support decision and will limit its review to determining whether the trial court abused its discretion. *Id.* (citing *Robertson*, 76 S.W.3d at 343).

A trial court abuses its discretion if it applies an incorrect legal standard, reaches an illogical result, resolves an issue based on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Gonsewski*, 350 S.W.3d at 105 (citing *Wright ex rel. Wright*, 337 S.W.3d 166, 176 (Tenn.2011) and *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). An appellate court is not to substitute its judgment for that of the trial court where reasonable minds can disagree about the propriety of the trial court's decision. *Jackman v. Jackman*, 373 S.W.3d 535, 541-42 (Tenn. Ct. App. 2011) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998) and *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

Wife contends that regardless of any effort on her part, she will never be able to earn enough to match the standard of living she enjoyed during her marriage, or the standard of living Husband will continue to enjoy post-divorce. The record supports that argument.

The proof shows that Wife is 45 years old and that, with the agreement of Husband, she stayed at home to take care of the parties' children while Husband pursued his education and career as a doctor. Although Wife is able-bodied, it is not realistic to believe Wife can be rehabilitated to the extent that she will be able to achieve a standard of living comparable to the standard of living of the parties prior to the divorce or to the standard of living Husband is expected to enjoy post-divorce. Consequently, Wife is not capable of rehabilitation as defined by statute.

As the general assembly has found,

[T]he contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the

relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(c)(2).

The evidence shows that Wife has taken steps to make herself more marketable by becoming a licensed real estate agent and earning her certification as a surgical technologist. However, the best job she has been able to find pays just 1/10 of the amount Husband earns in a year as a physician.

Having determined that Wife is not able to be rehabilitated, we find that the trial court erred in failing to award Wife alimony *in futuro*. The trial court failed to apply the correct legal standard to the facts. *See Crabtree*, 16 S.W.3d at 360 (where rehabilitation is not feasible, alimony *in futuro* award may be appropriate); *Owens v. Owens*, 2013 WL 3964793, at *3-4 (Tenn. Ct. App. July 30, 2013) (wife awarded alimony *in futuro* upon finding she was economically disadvantaged and unable to be rehabilitated).

## C. The Amount of Alimony to Award

As we noted above, our courts have frequently stated that the two most important factors for the courts to consider when making alimony determinations are the disadvantaged spouse's need and the obligor spouse's ability to pay. The majority of the marital property Wife has been awarded is in the form of retirement funds that are not immediately accessible to her. Wife currently earns $3,000 per month as an assistant property manager. Wife introduced evidence at trial that her expenses total $9,580, but this amount assumed she would be designated the primary residential parent of the parties' two children. On appeal, Wife asks for an award of $6,000 per month.

Father stated at trial that he was only able to pay $3,000 or $3,500 per month in alimony. The proof showed, however, that he is able to pay more. We find Wife has a need for alimony in futuro and that Husband has the ability to pay Wife $4,500 per month. Accordingly, we modify the trial court's judgment and award Wife alimony *in futuro* in the amount of $4,500 per month.

We recognize that Wife's receipt of $4,500 per month will not necessarily place her in the same position as Husband, economically, or return her to the lifestyle she may have enjoyed during the parties' marriage. The Supreme Court has noted, however, that

> Alimony in futuro "is not . . . a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs v. Riggs*, 250 S.W.3d 453, 456 n.2 (Tenn. Ct. App. 2007). In many instances, the

parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002). While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle . . . ." *Id*.

*Gonsewski*, 350 S.W.3d at 108.

## V. ATTORNEY'S FEES

In the course of this litigation, Wife incurred attorney fees of about $136,000. Husband's fees amounted to about $78,000. Wife asked the trial court to order Husband to pay her fees, but the court declined and ordered that each party be responsible for his or her own fees. Wife contends on appeal that this was error because our courts have said that an award of attorney fees is appropriate when the spouse seeking such fees does not have adequate funds to pay his or her legal expenses. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Koja v. Koja,* 42 S.W.3d 94, 100 (Tenn. Ct. App. 2000). Wife argues that the resources she has obtained through the divorce, together with the income she is earning at her job, are insufficient to enable her to pay her attorney's fees.

For his part, Husband contends, that there is more than enough money in the retirement funds that Wife was awarded to cover her legal expenses. Wife notes, however, that withdrawal of money from the retirement account would result in large penalties and negative tax consequences. She argues that because she does not have the same capacity that Husband does to replenish the retirement account, she should not be required to deplete those limited funds.

An award of attorney fees in a divorce case constitutes alimony *in solido*. Tenn. Code Ann. § 36-5-121(h)(1). As with any alimony award, in deciding whether to award attorney fees, the court should consider the needs of the obligee, the ability of the obligor to pay and the factors listed in Tenn. Code Ann. § 36-5-121(I); *Gonsewski v. Gonsewski*, 350 S.W.3d at 113. Even though Wife received half of the marital assets, the largest part of those assets by far are in the form of Husband's retirement benefits, which she may not be able to access without incurring a penalty.

Our reclassification of Husband's separate bank account as his separate property means that Wife has a diminished share of the remaining liquid financial assets. With monthly income of only $3,000 from her job and $4,500 per month in alimony *in futuro,* Wife would be hard-pressed to pay all her attorney's fees and avoid the depletion of the assets that she has been awarded. Further, Husband has the means to cover a portion of Wife's attorney's fees.

In light of Wife's need, Husband's ability to pay, and the factors set out in Tenn. Code Ann. § 36-5-121(I), we reverse the trial court's order denying Wife an award of attorney fees and remand this case to the trial court for entry of an order directing Husband to pay one-half of the attorney's fees Wife incurred at trial.

Wife also requests an award of her attorney's fees incurred on appeal. We award Wife the fees she incurred on appeal. On remand, the trial court shall determine the amount of the fees awarded.

## VI. CONCLUSION

With the exception of the Southwest Rapid Reward points, which we award to Husband, we affirm the trial court's equal division of the marital property. We exclude from that division, however, the funds derived from the sale of Husband's separate property. As explained above, Husband's 401(k) account is to be divided equally between the parties. We reverse the trial court's decision to award Wife transitional alimony for five years and award Wife alimony *in futuro* in the amount of $4,500 per month. Finally, on remand the trial court shall order Husband to pay one-half of Wife's attorney's fees incurred at trial and determine the amount of Wife's reasonable attorney's fees incurred on appeal. The costs of this appeal shall be taxed to the appellee, Jim Najib Jirjis, for which execution shall issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE